**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. TERRY GOLDBERG and STATE OF CALIFORNIA, ex rel TERRY GOLDBERG,<br><br>Plaintiff,<br><br>v.<br><br>SACRAMENTO HEART AND VASCULAR MEDICAL ASSOCIATES, a California corporation; PHILIP M. BACH, M.D., an individual; PHILIP M. BACH, M.D., INC., a California corporation; and DOES 1–100, inclusive,<br><br>Defendants. | No. 2:19-cv-00992-DJC-JDP<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |

In her Complaint, Relator, who is a former employee of Defendant Sacramento Health and Vascular Medical Associates ("SHVMA"), claims that SHVMA, as directed by Dr. Philip Bach (together, "Defendants"), paid primary care physician employees of SHVMA bonuses based on their referral of patients for various diagnostic services provided by the Defendants in violation of federal and state law. Plaintiffs further allege that the Defendants utilized a billing code that is not justified by the service being performed, and that results in a higher amount being paid by Medicaid and Medi-Cal. Because the relator was allegedly fired after bringing concerns about these practices to the attention of Bach, she also claims that Defendants engaged in illegal

1

retaliation.

Defendants bring this Motion (ECF No. 36) to dismiss all the claims related to the state and federal false claims act and related claims brought under the California Insurance Code and the California Business and Professions Code. Broadly speaking, Defendants argue that the alleged bonuses paid to the primary care physicians fall within a safe harbor for payments to bona fide employees, taking them outside the federal and state false claims acts, and that those payments are not otherwise prohibited under California law.

For the reasons that follow, the Court DENIES the motion.

## **FACTUAL ALLEGATIONS**

The following facts are taken from Realtor's Complaint and are assumed to be true for purposes of this motion. Relator Terry Goldberg was employed by Defendant Sacramento Heart and Vascular Medical Associates from May 2016 to approximately February 2018 as a practice administrator. (*See* Compl. (ECF No. 1) ¶¶ 65, 71.) SHVMA is a "cardiovascular care center" that includes "all aspects of adult diagnostic and therapeutic cardiology." (*Id*. ¶ 24.) SHVMA is owned and managed by Defendant Phillip Bach, M.D. (*id*. ¶ 14), and "employs three primary care physicians" along with seven board-certified cardiologists. (*Id*. ¶ 24.) SHVMA accepts Medicare and Medi-Cal patients, who are covered by a large number of insurance providers. (*Id*. ¶ 25.) In addition to the services provided by the physicians who work there, SHVMA "generates substantial revenue" from the diagnostic services it provides, such as x-rays, CT scans, PET scans and the like. (*Id*. ¶ 29.)

According to the Complaint, SHVMA and Dr. Bach "knowingly and willfully pay[ ] its primary care physicians . . . illegal bonuses based on the number of patients they refer" for various procedures. (Compl. ¶ 26.) Specifically, Relator alleges that SHVMA's primary care physicians are paid $40 per referral, and that the bonuses are paid on a quarterly basis. (*Id*. ¶ 27.) The Complaint further alleges that in exchange for the bonus payments, the primary care physicians "have referred thousands of

Medicare, Medi-Cal, and private insurance patients to SHVMA-owned testing equipment for which Medicare, Medi-Cal, and private insurers have paid reimbursement (*id*. ¶ 28), resulting in millions of dollars in revenue (*id*. ¶ 29). Relator asserts that after she raised concerns about this bonus structure, Dr. Bach called her into his office and admonished her for using the word "kickback" in describing the bonus structure (*id*. ¶ 36), but just a few weeks later Bach ordered SHVMA to stop tracking the primary care physicians' referrals (*id*. ¶ 37).

In addition to this bonus structure, Relator alleges that Defendants have engaged in "upcoding", which Relator describes as a "type of fraudulent billing where healthcare providers submit inaccurate billing codes to insurance companies in order to receive inflated reimbursements." (Compl. ¶ 45.) Relator's allegations focus on Current Procedural Technology ("CPT") code 99214, one of the 7,800 codes used by healthcare providers. (*Id*. ¶¶ 46, 48.) According to Relator, 99214 is in a range of Evaluation and Management Codes of 99211–99215, which are arranged in order of complexity. (*Id*. ¶ 49.) In determining which code applies, a physician considers "1. the extent of the history of the patient, 2. the extent of the examination, and 3. the complexity of the medical decision making involved." (*Id*. ¶ 51.) Although not expressly stated, it appears from the Complaint that the higher code results in a higher dollar amount that is billed to the insurance company. (*See also* Mem. of P. and A. in Support of Defs.' Mot. to Dismiss Counts 1 Through 10 of Pl.'s Compl. (ECF No. 36-1) at 3 n.5 ("Motion" or "Mot.").)

Relator alleges that Dr. Bach billed the 99214 code more than 3,400 times in a 11-month period in 2017, while a colleague who saw the same number of patients and generally performed the same services used the code 500 times in that same period. (Compl. ¶¶ 57-58.) A different physician, who treated a larger number of patients with more complex issues, used the code 1,600 times in the same period. (*Id*.) According to Relator, Dr. Bach utilized the 99214 code for nearly 90% of his patients, far more than the national average of 36%. (*Id*. ¶¶ 63–64.) The Complaint

alleges that Dr. Bach would "'upcode' CPT code 99214 to 'pay back'[1] Medicare/Medi-Cal insurer, Molina Healthcare [ ] for the types of patients they referred to SHVMA." (*Id*. ¶ 59.)  Relator further alleges that Dr. Bach "intentionally avoided referring patients back to their primary care physician when he knew the patient no longer needed his routine cardiology services . . . in order to, *inter alia,* fraudulently increase the number of opportunities he had to improperly bill for code 99214." (*Id*. ¶ 61.)

Finally, Relator alleges that after expressing concerns about these and other allegedly improper practices, her employment was terminated, "despite her exemplary performance as SHVMA's practice administrator." (*Id*. ¶¶ 65–71.)  Relator alleges that SHVMA had "no legitimate reason" to terminate her employment, and that she was fired for raising these concerns in violation of state and federal law. (*Id*. ¶ 71.)

The Complaint includes 11 causes of action related to the bonus structure and upcoding, each of which Defendants argue fails to state a claim upon which relief can be granted. (*See* Mot. at 2).  The Complaint further includes three causes of action related to the termination of Relator's appointment, although Defendants have not challenged those claims in the instant Motion to Dismiss. (*See* Relator's Opp'n to Defs.' Mot. (ECF No. 37) at 1 n.1 ("Opp'n").)

## **LEGAL STANDARDS**

A party may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party."  *Steinle v. City and Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51

---

[1] While it is somewhat unclear to the undersigned, in context it appears that this phrase is meant to allege that the use of the higher code was intended to punish Molina for sending less desirable patients to SHVMA.

4

F.3d 1480, 1484 (9th Cir. 1995)). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

Regarding claims related to fraud, Federal Rule of Civil Procedure 9(b) requires that they be pled with "particularity." *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F3d 1047, 1054–55 (9th Cir. 2011). The circumstances alleged, to constitute fraud, must be "specific enough to give the defendant notice of the particular misconduct so that it can defend against the charge." *Godecke*, 937 F.3d at 1208. Specifically, the party must allege the "who, what, when, where, and how" of the misconduct. *Id*. (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

## DISCUSSION

### I.   Federal False Claims Act and Anti-Kickback Statute Claims

Each of Relator's first three causes of action are, at bottom, based on a violation of the Anti-Kickback Statute ("AKS").[2] Relator alleges that the bonus program violated 42 U.S.C. § 1320a-7b(2)(A), which she uses to form the basis for liability under the False Claims Act in the first cause of action for presenting false claims in violation of 31

---

[2] (*See* Mot. at 4–5; Opp'n at 5.) As Relator notes, 42 U.S.C. § 1320a-7b(g) expressly provides that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of subchapter III of chapter 37 of title 31[, the False Claims Act]." (*See* Opp'n at 5 n.2.)

5

U.S.C. § 3729(a)(1)(A); in the second cause of action for making or using false records or statements that are material to payment or approval of false claims in violation of 31 U.S.C § 3729(a)(1)(B); and in the third cause of action for retention of proceeds to which Defendants were not entitled in violation of 31 U.S.C. § 3729(a)(1)(G).

Defendants make two arguments as to why each of these claims should fail. First, Defendants argue that a safe harbor for amounts paid to an employee take the bonus program out of the purview of the AKS, and, as a result, there is no liability under the False Claims Act as alleged by the first three causes of action. Relatedly, Defendants argue that since the safe harbor applies, Relator cannot have pled that any violations of the False Claims Act were "knowing and willful." Second, Defendants argue that the Complaint fails to properly allege that the bonuses were paid in relation to a "federal healthcare program." The Court takes each argument in turn.

### A.     The Complaint Establishes No Affirmative Defense On Its Face.

The Anti-Kickback Statute prohibits an individual from:

> knowingly and willfully solicit[ing] or receiv[ing] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind – (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program.

42 U.S.C. § 1320a-7b(b)(1). However, the AKS provides that this prohibition does not apply to "any amount paid by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services[.]" 42 U.S.C. § 1320a-7b(b)(3)(B). Defendants argue that this safe harbor provision applies, and prohibits liability under the AKS and, accordingly, the federal False Claims Act. (*See* Mot at 5–6.)

Typically, affirmative defenses may not be raised in a motion to dismiss under Rule 12(b)(6). *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (*per curiam*). While an affirmative defense that "clearly appears on the face of the pleading" is grounds for dismissal, that is the case "only if the plaintiff pleads itself out of court –

6

1  that is, admits all the ingredients of an impenetrable defense[.]"  *Boquist v. Courtney*,
2  32 F.4th 764, 774 (9th Cir. 2022) (citation and internal quotation marks omitted).  The
3  safe harbor provision is an affirmative defense.  *See U.S. v. Turner*, 561 Fed. Appx.
4  312, 319 (5th Cir. 2014) ("The safe harbor provision is an affirmative defense which the
5  defendant must prove."); *U.S. v. Yielding*, 657 F.3d 688, 700 (8th Cir. 2011) (same).

6  Relator argues that there is no allegation that the primary care physicians are
7  "bona fide employees." (Opp'n at 6.)  Defendants, by contrast, point to paragraph 24
8  of the Complaint, which alleges that "SHVMA also employs three primary care
9  physicians . . . ."  (Mot. at 6.)

10  Reference to "employees," however, is insufficient to establish the "bona fide
11  employment relationship" that is required for the safe harbor provision to apply.  *See*
12  42 U.S.C. § 1320a-7b(b)(3)(B).  The accompanying regulations, 42 C.F.R. § 1001.952(i),
13  provides that the applicable definition for a "bona fide employee" is that provided in
14  26 U.S.C. § 3121(d)(2).  Section 3121(d)(2), in turn, includes "any individual who, under
15  the usual common law rules applicable in determining the employer-employee
16  relationship, has the status of an employee."  In making this determination, the Ninth
17  Circuit has looked to factors including "(1) whether the business has the right to
18  discharge the worker; (2) whether the business furnishes tools to the person rendering
19  the service; (3) whether the business provides the worker with a place to work; and (4)
20  whether the work is performed in the course of the individual's business rather than in
21  some ancillary capacity."  *Gen. Inv. Corp. v. U.S.*, 823 F.2d 337, 342 (9th Cir. 1987)
22  (citations omitted).  None of these factors are alleged in the Complaint, which
23  therefore fails to admit "all the ingredients of an impenetrable defense[.]"  *Boquist*, 32
24  F.4th at 774 (citation and internal quotation marks omitted).

25  For this reason, courts have uniformly rejected requests to dismiss AKS and
26  False Claims Act cases on the basis of the safe harbor provision where the complaint
27  includes bare allegations regarding "employment" generally.  For instance, in *United*
28  *States ex rel. Parikh v. Citizens Medical Center*, 977 F. Supp. 2d 654, 668-69 (S.D. Tex.

7

2013), the defendant likewise argued that the AKS claims should be dismissed on a 12(b)(6) motion under the safe harbor provision. The court denied the motion to dismiss on the grounds that "[t]he facts alleged in the complaint do not satisfy [Defendant's] requisite burden of proof for its affirmative defenses," holding that "whether the ER physicians count as bona fide employees under the AKS depends on Citizens meeting its burden of showing that the common law factors—which include whether Citizens had the right to control the manner and means of the physicians' work, the method of payment, and Citizens' control over the physicians' work hours—support such a conclusion." *Id*. at 669. Similarly, in *United States v. Novak*, No. 13-cr-312, 2014 WL 2937062 (N.D. Ill. June 30, 2014), the court rejected the argument asserted by Defendants here, concluding that while "the indictment refers to Employee A—and the corresponding individuals cited in the other charges in question—as 'employees,' the indictment does not allege they were bona fide employees of Sacred Heart Hospital, which is the predicate for the safe harbor provision on which the defendants rely." *Id*. at *2. In line with the above, in *United States v. Crinel*, cited by Relator, the court rejected a motion to dismiss an indictment on similar grounds, noting that, "although Paragraph 49 uses the word "employee," it does not explicitly state that any of the individuals listed are "bona fide" employees—the term used in the statute." No. 15-61, 2015 WL 3755896, at *4 (E.D. La. June 16, 2015).

The case cited by Defendants, *United States ex rel. Beck v. St. Joseph Health Systems*, is inapposite. *See* No 5:17-cv-052-C, 2021 WL 7084164 (N.D. Tex. Nov. 30, 2021). In *Beck*, the Court granted summary judgment in favor of the defendant based in part on the safe harbor. In that case, however, the relator did not "dispute that the physicians at issue in this case are *bona fide* employees of [the defendant]. . . ." *Id*. at *7. Unsurprisingly, the court held that, in the absence of a dispute, a defendant is not required to provide additional evidence to establish an affirmative defense. *See id*. (citation omitted). In this case, however, the case is still at the pleading stage, and

Relator does not concede that the primary care physicians are bona fide employees. The Complaint does not on its face establish the elements of the affirmative defense in 42 U.S.C. §1320a-7b(b)(3)(B). The Motion to Dismiss is therefore DENIED on that basis.

**B.     The Complaint Adequately Alleges Scienter.**

Defendants' argument that Relator has adequately pled scienter largely relies on application of the safe harbor for payments to bona fide employees and must thus be rejected. Defendants argue that "[a] claim cannot be knowingly false under the FCA, or reflect a 'knowing and willful' violation of the AKS, if that statute protects the underlying payment." (Mot at 7.) At this stage of the proceedings, Relator has pled facts sufficient to show that the payments were an unlawful kickback.

Moreover, the Complaint alleges specific facts that show scienter. In the Ninth Circuit, while "'circumstances constituting fraud or mistake' must be stated with particularity, [ ] 'malice, intent, knowledge, and other conditions of a persons mind,' including scienter, can be alleged generally." *United States v. Corinthian Colleges*, 655 F.3d 984, 996 (2011) (internal citations and quotations omitted). Here, Relator has alleged scienter (*see* Compl. ¶ 40 (alleging scienter for SHVMA and Dr. Bach); *also id*. ¶ 28 (alleging that Bach explained the allegedly illegal referral program to the primary care physicians)), including facts supporting that assertion (*id*. ¶¶ 33–37 (explaining that another primary care physician and their assistants were aware of the "kickback" scheme)).

Defendants cite to *Corinthian Colleges*, 655 F.3d at 997 and *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179–81 (9th Cir. 2013) for the proposition that "if the statute itself or a regulatory safe harbor implicates such protections, a claim fails for lack of scienter, unless a relator pleads particularized facts that 'support an inference' that defendants 'did not, in good faith, rely upon the Safe Harbor Provision." (Mot. at 7.) In those cases where the defendant was successful, however, the complaint, or materials incorporated by reference in the complaint, established the affirmative defense. As

discussed above, *supra* Part I.A, that is not the case here. In *Corinthian Colleges*, the Ninth Circuit reversed because the plaintiff could easily amend the complaint to plead that the defendant knew that their conduct fell outside the scope of the safe harbor. *See Corinthian Colleges*, 655 F.3d at 997. So too here as the Relator alleged that SHVMA, Bach, and the other doctors were aware of the upcoding and "kickback" program. (*See* Compl. ¶¶ 18–21, 24–28, 33–37.) In *Sams*, the plaintiff "pled no facts sufficient to lead to a plausible inference that Yahoo! actually knew that these subpoenas were invalid[,]" and therefore fell outside the scope of the safe harbor. *Sams*, 713 F.3d at 1181. But here, Relator alleges that Defendants, including Doe defendants, conspired to upcode patients and make false referrals to create larger reimbursements and defraud the government. That is, Relator alleges that each of the Defendants knew about the fraudulent conspiracy and participated in it, which is sufficient to allege scienter at this stage. *Compare with Novak*, 2014 WL 2937062, at *1 (alleging conspiracy); *Parikh*, 977 F. Supp. 2d at 677–78 (same); *Crinel*, 2015 WL 3755896, at *6 (same); and *contrast with Sams*, 713 F.3d at 1181 ("For even assuming, *arguendo*, that these subpoenas were ultimately invalid, they bore all of the indicia of lawful authority.").

The Motion to Dismiss on this ground is DENIED.

**C.     The Complaint Alleges Payments Made Under a Covered Program.**

Seizing on a statement in the Complaint that when Relator "began working at SHVMA, Relator's predecessor, Karen Gergen, told her to exclude referrals to patients insured directly through Medicare," (Compl. ¶ 35), Defendants argue that the Complaint does not allege that the bonus payments were paid "under a Federal healthcare program," and thus does not implicate the AKS or the Federal False Claims Act. (Mot. at 7–8.) The Court disagrees.

As an initial matter, the Court will not consider the materials attached to Defendants' Opposition. As a general matter, when ruling on a motion to dismiss under Rule 12(b)(6), "a court may generally consider only allegations contained in the

10

pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). "However, in order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Id.* (internal citations and quotation marks omitted). Defendants request that this Court consider, as Exhibit A, a "Sample Talley Sheet" and, as Exhibit B, a "Sample Bonus Calculation." Procedurally, Defendants' request is insufficient, as Defendants cite no authority for the Court to consider a *portion* of a document referenced in a Complaint. *See* Fed. R. Evid. 201(c)(2) (stating that the court "must take judicial notice if a party requests it and the court is supplied with the necessary information[]"). More substantively, however, the doctrine of incorporation by reference applies only "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, Relator only references the spreadsheet in one paragraph, and unlike a contract or a deed of trust, the spreadsheet does not form the basis of Relator's claims. As the Ninth Circuit has recognized, "the mere mention of the existence of a document is insufficient to incorporate the contents of a document" under existing precedent. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)). Accordingly, the Court need not – and does not – consider Exhibits A and B.

Turning to the merits of Defendants' argument, though it is true that one paragraph of the Complaint suggests that the bonus payments were not applied where the patients were insured directly through Medicare, many other paragraphs directly allege that the payments were made for patients who were covered by a federal health care program. (*See, e.g.*, Compl. ¶¶ 25, 28, 30–34, 39–40, 43–44.) In its entirety, paragraph 35, on which Defendants rely, states:

> Until her conversation with Tasha, Relator did not suspect the patient referral reports were used to general illegal kickbacks. When she began working at SHVMA, Relator's predecessor, Karen Gergen, told her to exclude referrals to patients insured directly though Medicare, and that doing so rendered the bonus payments legal. Ms. Gergen worked as SHVMA's administrator for twenty-five years. Relator became suspicious of the bonus program after Tasha used the word "kickback."

Other portions of the Complaint, however, expressly state that the bonus program was tied to patients who were insured by Medi-Cal and Medicaid. The immediately preceding paragraph, 34, alleges that "[t]he referral reports included patients insured by Medicare and Medi-Cal through, among others, Molina Healthcare and River City Medical Group." While those patients would not have been "insured directly through Medicare," Defendants do not appear to contest Relator's assertion in her opposition that although the patients referenced in Paragraph 35 "may not have been insured directly through Medicare (i.e., Medicare Part B, a/k/a 'traditional' Medicare), the allegations are clear that Medicare and other government funds were implicated by the kickback scheme." (Opp'n at 9–10.) In any event, several other paragraphs allege that federal funds were implicated. (*See* Compl. ¶ 30 ("In an effort to increase revenue for SHVMA by performing unnecessary tests of Medicare, Medi-Cal, and privately insured patients . . . ."); *id.* ¶ 31 ("These large bonus payments induced and incentivized the PC physicians to further increase the number of Medicare, Medi-Cal, and privately insured patients they referred to SHVMA owned testing equipment. . . . SHVMA and BACH have knowingly induced and continue to induce referrals of Medicare, Medi-Cal, and privately insured patients to SHVMA owned tested equipment by offering the PC physicians these illegal bonuses."); *id.* ¶ 39 ("SHVMA, at BACH's direction, intentionally and knowingly paid the bonuses to the PC physicians in exchange for patient referrals covered by the Medicare, Medi-Cal, and private insurers.").)

Accordingly, the Motion to Dismiss is DENIED as to the first, second, and third

causes of action.

## II.     California False Claims Act

Defendants also move to dismiss the fourth, fifth, and sixth causes of action, all related to the California False Claims Act, California Government Code section 12651. Each of these claims are based on allegations that the bonus program violates California Welfare and Institutions Code section 14107.2 and California Business and Professions Code section 650.  The Court need not address whether the bonus programs violate Business and Professions Code section 650, however, because, for the reasons identified in *supra* Part I.A, Relator has pled a violation of the Insurance Code sufficient to support her allegations under the California False Claims Act.

As Defendants themselves note, Welfare and Institutions Code section 14107.2 is "California's Medi-Cal antikickback statute," which is "specifically 'based on' the federal AKS." (Mot. at 8 (citations omitted).) Indeed, the text of section 14107.2 is virtually identical to the federal AKS. *Compare* Cal. Welf. and Inst. Code § 14107.2 *with* 42 U.S.C.§ 1320a-7b.  That includes the safe harbor for "[a]ny amount paid by an employer to an employee, who has a bona fide employment relationship with that employer, for employment with provision of covered items or services." Cal. Welf. and Inst. Code § 14107.2(c)(1).  As with the AKS safe harbor, the Complaint does not plead each of the elements of the affirmative defense – specifically, that the primary care physicians are "bona fide employees."  Accordingly, the Court DENIES the Motion to Dismiss related to the fourth, fifth and sixth causes of action.

## III.    California Insurance Fraud Prevention Act

Defendants also seek dismissal of Relator's seventh cause of action for violation of California Insurance Code section 1871.7(a).  That section provides that it is "unlawful to knowingly employ runners, cappers, steerers, or other persons to procure clients or patients to perform or obtain services or benefits pursuant to Division 4 (commencing with Section 3200) of the Labor Code . . . ."  Defendants argue first that since the bonuses were paid when *existing* patients were internally referred for

13

diagnostic services provided by SHVMA, the bonuses could not have been "to procure clients or patients." (Mot. at 10.) Second, Defendants argue that since the primary care physicians were principally engaged in treating patients, they were not hired for the "prohibited objective" of procuring patients. (*Id*. at 11 (citing *State ex rel Wilson v. Super. Ct.*, 227 Cal. App. 4th 579, 593 (2014)).)

There are very few cases interpreting section 1871.7. The foundational case of *Wilson*, cited by both parties, is instructive. In *Wilson*, the Court of Appeal focused on the text of section 1871.7(a), noting that:

> The conduct made unlawful by subdivision (a) is identified by a single verb: To employ. Subdivision (a)'s single verb makes a single act unlawful: Employment. What kind of employment is unlawful? Employment of a person or persons ("runners, cappers, steerers or other persons"), for a specified purpose: "to procure clients or patients to perform or obtain services or benefits . . . that will be the basis for" an insurance claim. Subdivision (a) is violated by the employment of others with that objective; it does not make proof of that result a prerequisite to its violation.

*Id*. at 593 (footnote omitted). Unfortunately, *Wilson* expressly declined to address whether a physician may be a runner or a capper. *Id*. at 609.

While Defendants appear to argue that the employment of a person must be for the *sole* purpose of procuring clients, nothing in *Wilson* suggests that to be the case, and one of the few cases to interpret section 1871.7(a) suggests otherwise. In *People ex rel. Government Employees Insurance Company v. Cruz*, 224 Cal. App. 4th 1184 (2016), the relator alleged that Dr. Cruz paid another physician, Dr. Tomassetti, referral fees disguised as rent, when in fact the moneys paid were "disproportionate to any alleged rent, services, or other overhead Dr. Tomassetti may have been providing." *Id*. *at* 1190. Of course, the rent and any other services provided by Dr. Tomassetti must have had *some* value, thus suggesting that "employment" can be for multiple purposes. So too here. Defendants are alleged to have "employed" the primary care physicians for lawful and unlawful objectives.

Moreover, the Court concludes that the procurement of patients is not limited

14

to "new" patients. The statute is intended to prevent the use of runners to procure clients or patients "*to perform or obtain services or benefits*." Cal. Ins. Code. § 1871.7(a) (emphasis added). The entire point of the scheme, as alleged by Relator, was to encourage primary care physicians to perform new and additional services. To interpret section 1871.7 to be inapplicable where one physician refers a patient to another provider within the same practice – a common occurrence – would severely undercut the applicability of section 1871.7, despite no indication this was the Legislature's intent.

This result is consistent with the intent behind section 1871.7(a) as found by the court of appeal in *Wilson*, which noted that running and capping activities are unlawful in part because they "may often result in services that are excessive or unnecessary . . . ." *Wilson*, 227 Cal. App. 4th at 601. Paying physicians bonuses whenever they order a diagnostic test, as was alleged to have happened here, can clearly result in utilizing services that are excessive or unnecessary. Indeed, Relator expressly alleges that occurred in this case. (*See* Compl. ¶ 30.) Accordingly, the Court DENIES the Motion to Dismiss the eighth cause of action.

## IV. Relator's Upcoding Claims

Several of Relator's causes of action are based on the alleged practices of Defendants in upcoding certain procedures, which Relator alleges are false claims for purposes of state and federal law since they result in higher payments for the underlying procedure than Defendants would have otherwise been entitled. Defendants' arguments that the allegations are "implausible" in various ways is, at bottom, an argument that Relator has failed to meet the pleading standards described by the Supreme Court in *Twombly* and *Iqbal*. This argument is devoid of merit.

In *Twombly*, the Supreme Court held that to state a claim under Federal Rule of Civil Procedure 8(a), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." *Iqbal*, 556 U.S. at 678.  These standards apply in this case, in addition to the requirement in Rule 9(b) that "in alleging fraud or mistake, a party must state with particularly the circumstances constituting fraud or mistake." *Cafasso*, 637 F.3d at 1055.

The Court has no trouble concluding that both Rule 9(b) and the *Twombly* formulation of Rule 8's requirements are met here.  In the Complaint, Relator alleges the specific individual who engaged in the alleged fraud, that is Dr. Bach (the who); the specific code being misused, that is, code 99214 (the what); the time period during which the alleged fraud occurred, that is January 2017 through November 2017 (the when); the particular practice area in which the alleged fraud occurred, that is, at SHVMA (the where); and the specific way in which the code was used without justification (the how).  Accordingly, Relator has pled fraud with sufficient particularity to meet the requirements of Rule 9(b).

The allegations in the Complaint are also sufficiently plausible to state a claim under Rule 8.  In addition to specifying the who, what, where, when, and how of the alleged fraud, Relator presents detailed factual allegations that show that the use of the 99214 codes is plausibly fraudulent.  According to Relator, while Defendant Bach used the 99214 code 3,400 times over an 11-month period, a doctor with a similar caseload used that code only 500 times. (Compl. ¶¶ 57–58.)  Relator also alleges that a doctor with a more complex caseload utilized the 99214 code at less than half the rate of Defendant Bach, which is particularly probative of potential fraud because these codes are justified by order of complexity, with the 99214 code requiring the second most complex procedures and examinations.  (*See id.*; *also id.* ¶¶ 49–56.)  These comparisons were supported by national data that suggest Defendant Bach was utilizing the 99214 code at a higher-than-normal rate. (*See id.* ¶ 63.)  Relator further alleges that she was told to stop investigating this phenomenon (*see* Compl. ¶ 60), suggesting the requisite scienter that Defendants knew or should have known that they were engaging in a fraud.  *See United States ex rel. Schutte v. Supervalu, Inc.*,

143 S. Ct. 1391, 1404 (2023).  And, in any event, the alleged fraud is a plausible explanation for this discrepancy.  (*See* Opp'n at 15.)  Finally, Relator alleges that when the use of this code came to light, Molina stopped accepting the 99214 code from SHVMA (*see* Compl. ¶ 62), which likewise supports the allegations that these codes were being used in an improper way.

At this stage of the proceedings, Relator has sufficiently pled causes of action related to upcoding.  Accordingly, Defendant's Motion to Dismiss these claims is DENIED.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 36-1) is DENIED.

IT IS SO ORDERED.

Dated:   **August 18, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE